UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DOYNE A. RHOADES,                    )
                                     )
Petitioner,                          )
                                     )
v.                                   )
                                     )        Case No. 4:11-CV-1388-SPM
                                     )
                                     )
DAVE DORMIRE,                        )
                                     )
Respondent.                          )

**MEMORANDUM AND ORDER**

This matter is before the Court on Missouri State prisoner Doyne A. Rhoades's

("Petitioner's") *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The

parties have consented to the jurisdiction of the undersigned United States Magistrate Judge

pursuant to 28 U.S.C. § 636(c). (Doc. 27). After reviewing the case, the Court has determined

that Petitioner is not entitled to relief. As a result, the petition will be dismissed.

## I.    FACTUAL BACKGROUND[1]

On December 18, 2006, Petitioner was in Moberly, Missouri, in violation of his parole.

He was visiting the residence of his girlfriend, Zoah Smith. A friend of his from prison, Tim

Adams, was also present. Late in the evening, Willie Patton came to Smith's residence to collect

thirty dollars she owed him for crack cocaine. Patton initially told Smith and Petitioner that the

---

[1] Unless otherwise noted, these facts are taken from the opinion of the Missouri Court of Appeals
regarding Petitioner's direct appeal, Resp't Ex. D, and the opinion of the Missouri Court of
Appeals regarding Petitioner's appeal from the denial of his motion for post-conviction relief,
Resp't Ex. J. The factual findings of the state court are presumed to be correct unless Petitioner
presents clear and convincing evidence contradicting them. *See* 28 U.S.C. § 2254(e)(1); *Gray v.
Norman*, 739 F.3d 1113, 1116 (8th Cir. 2014).

debt would be forgiven if they stole some items from Wal-Mart for him, which they did. However, Patton later stated that the debt would be forgiven only for cash or sexual favors from Smith. Patton and Petitioner got into a physical altercation. Petitioner testified that Adams then struck Patton in the back of the head, and Patton fell to the ground unconscious. Petitioner testified that he and Adams loaded Patton into the back of a Lincoln vehicle. They drove to the home of Alfred Rathbun, where Petitioner told Rathbun that he had beaten a man unconscious because the man had "disrespected" Petitioner and that they wanted to borrow Rathbun's van to move the body. Rathbun refused, and Petitioner and Adams drove to a remote location in the Lincoln vehicle with Patton still in the trunk. According to Petitioner, when they opened the trunk to retrieve the body, Patton was alive, and he hit Adams with a tire iron. Petitioner testified that Patton then attempted to jump out of the trunk but fell, and Adams hit Patton multiple times with a tire iron. Petitioner and Adams then stripped the unconscious Patton down to his underwear, tied him up with cable and speaker wire from the car, and left him in a ditch. The medical examiner testified that Patton died in the ditch from a combination of head trauma and weather exposure.

On December 20, 2006, Petitioner was arrested for violating his parole and was confined to the Justice Center in Moberly. In investigating Patton's disappearance, Sergeant Arnsperger of the Moberly Police Department learned that Petitioner might have been one of the last people to see Patton before he disappeared. Investigators had also located the Lincoln vehicle and found blood evidence in the trunk. Arnsperger went to the Moberly Justice Center and spoke with Petitioner there. Petitioner initially stated that that he did not know Patton but eventually stated that he did know Patton, just not by that name, and that he had seen Patton and argued with him the day before the events in question. After this initial discussion, Petitioner refused to speak to

investigators without an attorney present. Subsequently, the pants Petitioner had been wearing when he was arrested were found to have blood stains on them that were consistent with Patton's DNA. Petitioner was then charged with first-degree murder and armed criminal action.

At trial, the State sought to elicit testimony from Officer Arnsperger about his questioning of Petitioner prior to the request for counsel. Petitioner's counsel objected that the statements were inadmissible because they had been made without Petitioner having been given *Miranda* warnings. The trial court overruled the objection and permitted the testimony. Officer Arnsperger testified that he went to the Moberly Justice Center "just to find out if [Petitioner] knew where [Patton] was at" and that he did not know at the time what had happened to Patton. Resp't Ex. K, Record on Appeal - Transcript, 468-69, 475. Officer Arnsperger testified that he asked to speak to Petitioner, that Petitioner was brought down from his cell, and that Officer Arnsperger and another officer sat down with him and spoke with him. *Id.* at 469. The officer testified that he did not give *Miranda* warnings to Petitioner "[b]ecause I didn't have a crime and I wasn't asking—he wasn't under arrest by me." *Id.* The officer told Petitioner that they were investigating a missing person case, told him that his name had come up in conversations with Patton's family members, and asked him if he knew anything about Patton or where he was. *Id.* at 470-71. The officer testified that Petitioner initially said he did not know Patton. *Id.* at 471. The officer then asked Petitioner questions about his activities during the days preceding Patton's disappearance. *Id.* at 471-75. The officer testified that Petitioner eventually stated that he did know Patton, just not by that name; that Patton had come over and gotten into a dispute with Petitioner and his girlfriend over a $30 debt; that Patton had threatened to shoot them; that Patton left; and that Petitioner did not know what had happened to Patton. *Id.* at 477-80. The officer testified that Petitioner was free to not answer his questions. *Id.* at 469. Petitioner

acknowledged on cross-examination that he knew he did not have to talk to the officers if he did not want to and that he had not been forced to talk to the officers. *Id.* at 654.

Also at trial, during the cross-examination of Petitioner, the state attempted to impeach Petitioner by showing that his changing testimony was related to his knowledge of his co-defendant's (Adams's) cooperation with police. Defense counsel objected on the ground that such testimony was hearsay. The trial court sustained the objection as to "the content of what Adams said" but stated that the prosecution could elicit testimony regarding "a motive to change [Petitioner's] statement." Resp't Ex. D, at 16. The cross-examination of Petitioner then included the following exchange:

> Q.    Okay. But you're—at that point in time, before talking to the police, you're concerned, one, if the [S]tate's going to seek the death penalty.
>
> A.    Yes.
>
> Q.    And you're concerned about whether Adams might testify against you.
>
> A.    Yes.
>
> Q.    And you now know, I don't need the details, but you now know that Mr. Adams has told a different story about—
>
> MR. SLUSHER: Objection, Your Honor. It's hearsay.
>
> THE COURT: The objection will be overruled.
>
> Q.    [By Mr. Zoellner]: You know he's telling a different story about who did what that night.
>
> A.    Yes.
>
> Q.    And he's pointing a finger at you.
>
> A.    Yes.

Resp't Ex. D at 16-17.

After the end of a two-day trial, the jury began deliberations at approximately 6:30 p.m. At 11:30 p.m., after five hours of deliberations, the jury sent a note to the trial court stating, "We would like to take a short break." The trial court responded with a note that said, "Please continue your deliberations." The jury did so and found the defendant guilty at around 2:00 a.m. on June 5, 2008.

## II.    PROCEDURAL BACKGROUND

On June 5, 2008, a jury in the Circuit Court of Randolph County convicted Petitioner of one count of murder in the first degree and one count of armed criminal action. Resp't Ex. A at 9, 87-88. On July 18, Petitioner was sentenced to concurrent terms of life in prison without eligibility for probation or parole and 30 years in prison. *Id.* at 97. On October 20, 2009, Petitioner's conviction and sentence were affirmed on direct appeal. Resp't Ex. D. On November 5, 2009, Petitioner filed a motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15, and on March 22, 2010, he filed an amended motion, Resp't Ex. E at 4, 110. The Circuit Court of Randolph County held a hearing on May 13, 2010, and it denied Petitioner's amended motion on June 8, 2010. *Id.* at 131, 137. On July 12, 2011, the Missouri Court of Appeals affirmed the denial of post-conviction relief. Resp't Ex. J. Petitioner's Motion for Rehearing and/or Transfer to the Supreme Court was denied on August 30, 2011.

Petitioner filed the instant petition for writ of habeas corpus on August 11, 2011 (Doc. No. 1), and it was amended with leave of Court on March 27, 2012 (Doc. Nos. 17 & 18). In the petition, as amended, Petitioner raises six claims for relief:

(1)    That the trial court violated Petitioner's Fifth Amendment right against self-incrimination when it admitted into evidence a statement made by Petitioner while he was in custody and no *Miranda* warnings had been given;

(2)      That the State's attorney's references at trial to the statements of Petitioner's non-testifying co-defendant violated Petitioner's Sixth Amendment right to confront his accuser;

(3)      That the trial judge's refusal of the jury's request to take a short break, without defense counsel present, was a coercive tactic that caused the jury to return a verdict they might not have reached had they been allowed the opportunity for a break or recess;

(4)      That Petitioner's trial counsel was ineffective for failing to allow the trial court the opportunity to decide whether the Uniform Mandatory Disposition of Detainers Law ("UMDDL"), Mo. Rev. Stat. §§ 217.450-217.485, had been violated;[2]

(5)      That Petitioner's trial counsel was ineffective for failing to file and litigate a pretrial motion to suppress statements Petitioner made while he was in custody and no *Miranda* warning had been given; and

(6)      That Petitioner's trial counsel was ineffective for failing to object on Sixth Amendment grounds to the State's attorney's references at trial to the statements of Petitioner's non-testifying co-defendant.

## III.    DISCUSSION

### A.  Exhaustion Analysis

A petitioner must exhaust his state law remedies before the federal court can grant relief on the merits of the claims in a habeas petition. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). The Court must first examine whether the federal constitutional dimensions of the petitioner's claims have been fairly presented to the state court. *Smittie v. Lockhart*, 843 F.2d 295, 296 (8th Cir. 1988) (citation omitted); *see also O'Sullivan*, 526 U.S. at 848. If they have not, the petitioner may still satisfy the exhaustion requirement if there are no "currently available, non-futile state remedies" by which he could present his claims to the state court. *Smittie*, 843 F.2d at 296 (citation omitted) (internal quotation marks omitted). Claims that

---

[2] Claim 4 was altered by amendment to be a claim of ineffective assistance of counsel rather than a claim that the UMDDL was violated.

are exhausted due to the absence of available state remedies, however, are considered procedurally defaulted. *See O'Sullivan*, 526 U.S. at 848.

A review of the record shows that all of Petitioner's claims for relief are exhausted because they were either raised in state court and determined on the merits or cannot currently be pursued through any available, non-futile state remedy.

### B. Procedural Default Analysis

"Ordinarily, a federal court reviewing a state conviction in a 28 U.S.C. § 2254 proceeding may consider only those claims which the petitioner has presented to the state court in accordance with state procedural rules." *Arnold v. Dormire*, 675 F.3d 1082, 1086-87 (8th Cir. 2012) (quotation marks omitted). "In Missouri, a claim must be presented at each step of the judicial process to avoid default." *Id.* at 1087.

A state prisoner may obtain federal review of a procedurally defaulted claim by showing either (1) cause for the default and actual prejudice as a result of the constitutional violation, or (2) that a failure to consider the claim would result in a fundamental miscarriage of justice. *Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). "Cause for a procedural default exists where 'something *external* to the petitioner, something that cannot fairly be attributed to him[,] . . . 'impeded [his] efforts to comply with the State's procedural rule.'" *Maples v. Thomas*, 132 S. Ct. 912, 922 (2012) (quoting *Coleman*, 501 U.S. at 753). "To fall within the fundamental-miscarriage-of-justice exception, 'a habeas petitioner [must] present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted.'" *Murphy*, 652 F.3d at 850 (quoting *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006)). "'Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a

miscarriage of justice that would allow a habeas court to reach the merits of a barred claim.'" *Cagle v. Norris*, 474 F.3d 1090, 1099 (8th Cir. 2007) (quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995)).

Respondent argues that Claim Six is procedurally defaulted, and the Court agrees.[3] In Claim Six, Petitioner argues that his trial counsel was ineffective for failing to object on Sixth Amendment grounds to the State's attorney's references to the statements of his non-testifying co-defendant. In Missouri, claims of ineffective assistance of trial counsel must be brought through a motion for post-conviction relief. Mo. Sup. Ct. Rule 29.15(a); *Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006). "Failure to raise a claim on appeal from the denial of a post-conviction motion erects a procedural bar to federal habeas review." *Jolly v. Gammon*, 28 F.3d 51, 53 (8th Cir. 1994) (citing *Gilmore v. Armontrout*, 861 F.2d 1061, 1065 (8th Cir. 1988)); *see also Osborne v. Purkett*, 411 F.3d 911, 919 (8th Cir. 2005) (holding an ineffective assistance of counsel claim procedurally barred where it was raised in a Rule 29.15 motion but was not included in an appeal to the Missouri Court of Appeals).

Petitioner raised this ineffective assistance claim in his amended motion for postconviction relief, Resp't Ex. E at 112, but he did not raise it in his appeal of the denial of postconviction relief, Resp't Ex. H at 26-29. Thus, the claim is procedurally defaulted for purposes of federal habeas review and can be reviewed only if Petitioner shows cause and prejudice or new evidence of actual innocence. Petitioner does not attempt to show cause for this

---

[3] Respondent also argues that Claims One and Two are procedurally defaulted. However, as discussed below, there is some uncertainty regarding whether those claims are procedurally defaulted, and even if they are not, they are without merit.

default,[4] nor does he present any new evidence of his actual innocence, so the Court is barred from considering this claim.

### C. Merits Analysis

"In the habeas setting, a federal court is bound by the [Antiterrorism and Effective Death Penalty Act of 1996] to exercise only limited and deferential review of underlying state court decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003) (citing 28 U.S.C. § 2254). Under this standard, a federal court may not grant relief to a state prisoner unless the state court's adjudication of a claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court decision involves an "unreasonable application" of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams*, 529 U.S. at 407-08; *see also Bell*, 535 U.S. at 694. "Finally, a state

---

[4] The Court notes that counsel's failure to raise the claim on appeal from the denial of the motion for post-conviction relief cannot constitute cause to excuse procedural default. *See Arnold v. Dormire,* 675 F.3d 1082, 1087 (8th Cir. 2012) (failure of post-conviction counsel to raise claims on appeal from initial-review collateral proceeding does not constitute cause to excuse procedural default).

court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Jones v. Luebbers*, 359 F.3d 1005, 1011 (8th Cir. 2004) (citations and internal quotation marks omitted).

### *1. Claim One: Admission of Statements Made Without Miranda Warnings*

In Claim One, Petitioner argues that his Fifth Amendment right against self-incrimination was violated when the trial court admitted into evidence a "non-mirandized statement" he made to police. Respondent first argues that Claim One is procedurally defaulted because Petitioner failed to raise the argument at or before trial through a motion to suppress. The Missouri Court of Appeals did find that the *Miranda* claim was "procedurally, not preserved for appellate review" under Missouri law, but it also discussed the requirements of *Miranda* and found the claim to be "without merit" based on the evidence before the trial court. Resp't Ex. D at 10-15 (citing, *inter alia*, Missouri Rule of Criminal Procedure 24.05 and *State v. Galazin*, 58 S.W.3d 500, 505 (Mo. 2001)). Where, as here, it is unclear whether the Missouri Court of Appeals' decision was based on an independent Missouri procedural rule or was dependent in part on the merits of Petitioner's constitutional claim, it is appropriate for this Court to address the merits of the claim.[5] *See*

---

[5] To the extent that the claim has been procedurally defaulted, this court is barred from reviewing it because Petitioner has not demonstrated cause and prejudice to excuse the default, nor has he presented new evidence that he is actually innocent. Petitioner suggests that his trial counsel's ineffective assistance in failing to file a pretrial motion to suppress constitutes cause to excuse any procedural default. However, for ineffective assistance of counsel to constitute cause and prejudice to excuse procedural default, the petitioner must demonstrate that the ineffective assistance standards outlined in *Strickland v. Washington*, 466 U.S. 668, 686 (1984), are satisfied. *Becht v. United States*, 403 F.3d 541, 545 (8th Cir. 2005); *Clemons v. Luebbers*, 381 F.3d 744, 752 (8th Cir. 2004). As discussed with respect to the merits of Claim Five below, Petitioner's trial counsel was not ineffective under *Strickland* based on his failure to file a motion to suppress Petitioner's pre-*Miranda* statements. Thus, Petitioner cannot establish cause to excuse the procedural default. Moreover, Petitioner presents no evidence showing that he was actually innocent of the crimes of which he was convicted.

*Lannert v. Jones*, 321 F.3d 747, 751 (8th Cir. 2003) (reviewing claim on the merits where state court found that the claim was not preserved for appeal but also appeared to address the merits of the claim); *Sweet v. Delo*, 125 F.3d 1144, 1150 (8th Cir. 1997) ("When a state court decides an issue on the merits despite a possible procedural default, no independent and adequate state ground bars consideration of that claim by a habeas court.") (citing *Harris v. Reed,* 489 U.S. 255, 262-63 (1989) and *County Court of Ulster County v. Allen*, 442 U.S. 140, 152-54 (1979)).

Even when the claim is considered on its merits, Petitioner is not entitled to habeas relief. As the Missouri Court of Appeals recognized, in *Miranda v. Arizona*, the United States Supreme Court formulated warnings that must be given to suspects before they can be subjected to custodial interrogation. 384 U.S. 436, 444 (1966). In assessing whether a suspect is in custody for purposes of *Miranda*, the court must assess "whether, in light of the objective circumstances of the interrogation, a reasonable person would have felt that he or she was not at liberty to terminate the interrogation and leave." *Howes v. Fields*, 132 S. Ct. 1181, 1189 (2012) (internal quotation marks and citations omitted). In making this determination, the court is to examine all of the circumstances surrounding the interrogation, including "whether [the] individual's freedom of movement was curtailed" and whether the relevant environment "presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Id.* at 1189-90.

The United States Supreme Court has held that a person questioned while serving a prison term is not necessarily in "custody" for purposes of *Miranda*, even though the prisoner's freedom of movement may be limited. *Id.* at 1188-90. It has reasoned in part that "questioning a person who is already serving a prison term does not generally involve the shock that very often accompanies arrest" and that a prisoner is not "pressured to speak by the hope that, after doing

so, he will be allowed to leave and go home." *Id.* at 1191. It has further held that taking a prisoner aside for private questioning does not necessarily render an interrogation custodial, even where it necessitates some additional limitations on freedom of movement; it noted that such procedures are an ordinary and familiar attribute of life behind bars. *Id.* at 1192. The Court held that the determination of custody "should focus on all of the features of the interrogation," including "the language that is used in summoning the prisoner to the interview and the manner in which the interrogation is conducted." *Id.* at 1192-93 (finding no custody for *Miranda* purposes where the prisoner had not been advised that he was free to decline to speak with the officers, the interview lasted between five and seven hours and continued well past the prisoner's normal bedtime, the officers were armed, and the officers used a very sharp tone, but the facts also showed that the prisoner was told that he could go back to his cell whenever he wanted, was not physically restrained or threatened, was interviewed in a well-lit and average-sized conference room whose door was sometimes open, and was offered food and water).

Here, in assessing whether Petitioner was in custody at the time of the statements at issue, the Missouri Court of Appeals noted that the standard was "whether a reasonable person in the defendant's position would have, in the totality of the circumstances, felt that their freedom was restrained more than in a normal detention setting." Resp't. Ex. D at 13. Assessing the evidence before it, it stated:

> [T]here is no evidence presented that coercive language was used to set up the interview; there is no evidence that coercive questions were asked; there is no evidence on the length of the interrogation; there is no evidence of psychological pressures borne upon Rhoades; there is no evidence of additional restrictions placed upon Rhoades's freedom; and while there is evidence that Rhoades was removed from his jail cell for the interview, the only tangible evidence that we have about Rhoades's state of mind about the interview is that he testifies that the circumstances of the interview were such that he knew he didn't have to speak with the investigators about Patton's disappearance and that he knew he had a

right to request an attorney. We also have the investigator's testimony that Rhoades was free to terminate the interview at any time and return to his jail cell.

*Id.* at 12-13. The court noted that although "subjective opinions" in the record "might be of some use in helping evaluate other objective factors, they are not the standard by which conformity to *Miranda* is measured." *Id.* at 13. The court found that the evidence was insufficient to establish that Petitioner was in custody at the time of the interview. *Id.* at 14-15.[6]

The Missouri Court of Appeals' decision was not contrary to clearly established Supreme Court precedent, nor did it involve an unreasonable application of clearly established federal law. The court articulated a "totality of the circumstances" standard that was consistent with *Howes,* and it considered factors consistent with the Supreme Court's direction in *Howes* that the court must consider "all of the features of the interrogation," including "the language that is used in summoning the prisoner to the interview" and "the manner in which the interrogation is conducted." 132 S. Ct. at 1192. Its conclusion that there was insufficient evidence to support a finding that Petitioner was in custody was not an unreasonable application of this standard, given that there was no evidence of coercive language, coercive questions, psychological pressures, or additional restrictions on Petitioner's freedom beyond Petitioner being removed from his jail cell. Moreover, the factual findings of the court did not involve an unreasonable determination of the facts in light of the evidence before it, because the court's factual findings are supported by the record before it.

For all of the above reasons, Claim One is denied.

---

[6] The Missouri Court of Appeals found that under Missouri law, because the defense objected to the admissibility of the evidence at trial (rather than presenting it through a motion to suppress), the defense bore the burden of establishing the unlawfulness of the police conduct. Resp't Ex. D., at 14-15 (citing *State v. Galazin*, 58 S.W.3d 500, 505 (Mo. 2001)).

### *2.  Claim Two: Confrontation Clause Violation*

In Claim Two, Petitioner argues that the State's attorney's references at trial to the statements of Petitioner's non-testifying co-defendant violated Petitioner's Sixth Amendment right to confront his accuser. Petitioner raised this claim in his direct appeal, and the Missouri Court of Appeals found that the error had not been preserved under Missouri's procedural rules because counsel did not raise a Sixth Amendment issue either at trial or in the motion for a new trial and did not raise the hearsay objection in a motion for new trial. Resp't Ex. D at 17 (citing Mo. Sup. Ct. R. 29.11(d) and *State v. Winfield*, 5 S.W.3d 505, 511 (Mo. 1999)). Therefore, it reviewed the claim only for plain error, which requires the appellant to demonstrate "that plain and obvious error was committed by the trial court and that either manifest injustice or a miscarriage of justice would occur if the error were not corrected." *Id.* at 17-18 (citing Mo. Sup. Ct. R. 30.20 and *State v. Wyble*, 211 S.W.3d 125, 129 (Mo. Ct. App. 2007)). The Court of Appeals found that although the trial court had erred, there was no manifest injustice and thus the claim was without merit.

Respondent argues that this claim is procedurally defaulted because of Petitioner's failure to raise it at trial or in a motion for new trial. Generally, where a criminal defendant violates a state procedural rule and thereby fails to preserve a constitutional claim for appellate review, the claim is procedurally defaulted and the federal court is barred from considering that claim in a habeas petition. *See Arnold v. Dormire*, 675 F.3d 1082, 1086-87 (8th Cir. 2012). However, there are conflicting panel decisions in the Eighth Circuit regarding whether plain error review by a state court cures a procedural default. *Compare Toney v. Gammon*, 79 F.3d 693, 699 (8th Cir. 1996) (holding a habeas claim was procedurally defaulted and could not be reviewed where the state court reviewed for plain error), w*ith Hornbuckle v. Groose,* 106 F.3d 253, 257 (8th Cir.

1997) (holding that because the state court reviewed for plain error, the federal court would review the habeas claim for plain error). *See also Briscoe v. Norman*, No. 4:11-CV-1154 JCH, 2014 WL 4204903, at *7-*8 (E.D. Mo. Aug. 22, 2014) (noting conflict between Eighth Circuit panel decisions). Where there are conflicting Eighth Circuit panel decisions, "the earliest opinion must be followed, as it should have controlled the subsequent panels that created the conflict." *Mader v. United States*, 654 F.3d 794, 800 (8th Cir. 2011) (en banc) (quotation marks omitted). However, because the Court finds that Petitioner's claim must be denied even if plain error review does excuse the procedural default, the Court need not determine which line of cases has the earliest origins and thus whether the claim is procedurally defaulted. *Cf. Briscoe*, 2014 WL 4204903, at *7-*8 (declining to decide which line of cases to follow because the claim at issue would be denied even under plain error review).

Even where plain error does excuse procedural default, the federal habeas court reviews only "for plain error resulting in manifest injustice." *Hornbuckle*, 106 F.3d at 257. The court does not conduct its own plain error review *de novo*; rather, its review is governed by AEDPA's deferential standards of review. *See Shelton v. Purkett*, 563 F.3d 404, 408 (8th Cir. 2009); *James v. Bowersox*, 187 F.3d 866, 869 (8th Cir. 1999).

On appeal, Petitioner argued that the admission of the statements at issue violated his rights under the Confrontation Clause, which "bars 'admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.'" *United States v. Spencer*, 592 F.3d 866, 878 (8th Cir. 2010) (quoting *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004)). Applying the first prong of the plain error inquiry, the Missouri Court of Appeals agreed with Petitioner that the trial court had plainly erred and had violated Petitioner's rights under the Confrontation Clause

when it permitted the prosecutor to state that Adams was "telling a different story" and was "pointing a finger at [Petitioner]." Resp't Ex. D at 20. However, it found that the second prong of the plain error analysis was not satisfied:

> The second prong of our plain error review is whether the trial court's plain error in permitting the line of questioning in question resulted in "manifest injustice." We find that it does not. Even if the line of questioning had been excluded by the trial court, there was more than sufficient additional evidence to support the jury's verdict. In addition to the inconsistent statements of Rhoades, there was the blood evidence on his jeans, Rhoades's admission to Rathbun that he had a body to dispose of that Rhoades had beaten because the victim had shown disrespect to him, and there were marks on the Lincoln vehicle that showed Patton's attempt to escape. Finally, there was Rhoades's own testimony in which he admitted that he had motive to attack the victim, had in fact attacked the victim, assisted in putting the victim in the trunk, assisted in stripping him and tying him up with speaker wire, and helped to carry him to a ditch, where Rhoades and Adams left him unconscious and bleeding on a cold December night. Though the prosecutor's improper questioning, which revealed the inculpatory substance of Adams's statement to police, was impermissible, it did not affect the outcome of the verdict and was not manifestly unjust.

Resp't Ex. D, at 20.

Petitioner does not argue, and has not shown, that the above findings are "contrary to" or "involve an unreasonable application of" clearly established federal law, as established by the United States Supreme Court. 28 U.S.C. § 2254(d)(1). Petitioner also cannot demonstrate that the above findings are "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2), because he does not argue or attempt to demonstrate that "the state court's presumptively correct factual findings do not enjoy support in the record." *Jones v. Luebbers*, 359 F.3d 1005, 1011 (8th Cir. 2004). Petitioner does not dispute that the Missouri Court of Appeals' description of the other evidence supporting a guilty verdict is consistent with the record. In light of this strong evidence, it was not unreasonable for the Missouri Court of Appeals to conclude that the erroneous admission of the challenged statements did not affect the outcome of the trial and thus that the error did not result in manifest

injustice. *See, generally*, *Briscoe*, 2014 WL 4204903 at *8 ("As the Missouri Court of Appeals noted, there was overwhelming evidence on which the jury could convict Briscoe. In the face of that overwhelming evidence, Briscoe cannot make the required showing for relief based on the plain error standard."); *Griffith v. Larkins*, No. 4:09CV1092 JCH, 2012 WL 1192189, at *17-*18 (E.D. Mo. April 10, 2012) (deferring to the state court's determination, on plain error review, that an improper remark would not have affected the jury's verdict, in part because of the other strong evidence of guilt).

For the above reasons, Claim Two is without merit and must be denied.

### 3. Claim Three: Trial Judge's Ex Parte Communication With the Jury Regarding the Jury's Request for a Break

In Claim Three, Petitioner argues that that the trial court violated his Sixth Amendment right to be present at trial and his Fourteenth Amendment right to due process when it refused the jury's request to take a short break during deliberations without giving defense counsel an opportunity to object. Petitioner raised this claim in his direct appeal, and the Missouri Court of Appeals denied it on the merits. Resp't Ex. D at 20-21.

The Fifth and Sixth Amendments to the Constitution protect a criminal defendant's right to be present at all stages of a trial. *Meeks v. United States*, 742 F.3d 841 (8th Cir. 2014); *Stewart v. Nix*, 972 F.2d 967, 971 (8th Cir. 1992). The trial court must provide defense counsel with notice and a meaningful opportunity to object before responding to questions asked by the jury after deliberations begin. *Meeks*, 742 F.3d at 844 *(quoting Stewart v. Nix*, 972 F.2d 967, 971 (8th Cir. 1992)). However, where there is no prejudice resulting from a communication between the trial court and the jury, a petitioner may not obtain habeas relief. *See Shelton v. Purkett*, 563 F.3d 404, 405, 408-09 (8th Cir. 2009) (trial court's ex parte response to jury question did not warrant habeas relief where the state court reasonably concluded that there counsel's presence during the

colloquy between the trial judge and counsel would have not have changed the trial judge's decision); *Atwood v. Mapes*, 325 F. Supp. 2d 950, 979 (N.D. Iowa 2004) (ex parte communication between trial court and jury did not warrant habeas relief because the record "clearly indicates a lack of prejudice" and thus the error was harmless), *aff'd*, 142 F. App'x 961 (8th Cir. 2000); *Jackson v. Hutto*, 508 F.2d 890, 891-92 (8th Cir. 1975) (improper communications between trial judge and jury outside of open court did not warrant habeas relief because "the record in this case discloses no prejudice").

Petitioner claims that he was prejudiced because the trial court's refusal to give the jury a break coerced it into reaching a verdict it might not otherwise have reached. The Missouri Court of Appeals found that it did not need to decide whether the trial court's actions were improper because there was "no evidence that the defendant was prejudiced." Resp't Ex. D at 21. It stated:

> While we note that deliberations had reached an advanced hour, a politely phrased request to continue deliberations in response to a single plea for a recess does not constitute conduct for which the trial court can reasonably be accused of directing a verdict to be reached or implying to the jury that they will be held until they are able to reach a verdict. The instruction of the court does not constitute coercion. Consequently, the defendant was not prejudiced.

*Id.*

Petitioner cites no authority suggesting that this analysis was contrary to or an unreasonable application of clearly established federal law, nor has this Court found any such authority.[7] Moreover, the Missouri Court of Appeals' analysis does not involve an unreasonable

---

[7] The Court notes that Petitioner does not argue that the state court should have presumed that the communication in this instance was prejudicial. The Eighth Circuit has held that "[c]ommunication between judge and jury in the absence of and without notice to the defendant creates a presumption of prejudice" that "may be overcome . . . by a clear indication of lack of prejudice." *Stewart v. Nix*, 972 F.2d 967, 971 (8th Cir. 1992). However, the presumption does not apply to contacts between a judge and jury that are merely "ministerial" rather than "substantive" in nature. *United States v. Mann*, 685 F.3d 714, 721 (8th Cir. 2012) (citations omitted). Here, the communication at issue appears to be "ministerial," because it did not involve

determination of the facts in the light of the evidence presented to it. Indeed, in the slightly different context of a habeas claim challenging the trial court's decision to give an *Allen* charge,[8] the Eighth Circuit held that a state court finding that the jury's verdict was not coerced is "the type of finding of fact" that is presumed correct in the absence of "convincing evidence to the contrary." *Stallings v. Delo*, 117 F.3d 378, 381-82 (8th Cir. 1997) (holding that the magistrate judge had "correctly applied the presumption of correctness to the state court of appeals' finding that the jury was not coerced into reaching a unanimous verdict, even though they had deliberated almost continuously for thirteen hours, had not slept for over twenty hours, and had been read [an *Allen* charge] after the foreperson indicated at 2:30 a.m. that the jury was at a stalemate"). Regardless of whether the finding of no coercion here (and thus no prejudice) is entitled to a presumption of correctness, it is consistent with the record and is not unreasonable in light of clearly established federal law.

For the above reasons, Claim Three must be denied.

### 4. Claim Four: Ineffective Assistance of Counsel – Failure to File Motion to Dismiss under the UMDDL

In Claim Four, Petitioner argues that his trial counsel was ineffective because he failed to allow the trial court to decide whether the Uniform Mandatory Disposition of Detainers Law ("UMDDL"), Mo. Rev. Stat. §§ 217.450-217.485, had been violated. Petitioner raised this claim

---

communication about the facts or substance of the case. Regardless, it has not been clearly established by the United States Supreme Court that a presumption of prejudice would apply to such a communication. Thus, the Missouri Court of Appeals' analysis was not contrary to or an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States.

[8] "An *Allen*-charge is a supplemental jury instruction that advises deadlocked jurors to reconsider their positions." *Wagner v. Jones*, 758 F.3d 1030, 1032 n.4 (8th Cir. 2014) (quotation marks omitted).

in his motion for post-conviction relief, and the Missouri Court of Appeals denied the claim on its merits. Resp't Ex. J at 11-16.

The UMDDL provides that a person confined to the Missouri Department of Corrections who has a detainer pending against him may file a written request to dispose of that detainer. Mo. Rev. Stat. § 217.450(1). Under the version of the UMDDL that applied when Petitioner was being detained, if the prisoner complies with certain procedural requirements for making such a request, he must be brought to trial within 180 days of the receipt of the request. *State v. Williams*, 120 S.W.3d 294, 298 (Mo. Ct. App. 2003) (citing § 217.460 (2000)). If the prisoner is not brought to trial within the 180-day period, "no court shall have jurisdiction to hear the case and shall issue an order dismissing the same with prejudice." *Id.*[9]

Petitioner argues that his counsel was ineffective for failing to file a motion to dismiss the case before trial because more than 180 days had passed since Petitioner had informed the Department of Correction that a "de facto detainer" had been lodged against him.

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, Petitioner must show that (1) "[his] counsel's performance was deficient" and (2) "the deficient performance prejudiced [his] defense." *Id.* at 687. In evaluating counsel's performance, the basic inquiry is "whether counsel's assistance was reasonable considering all the circumstances*." Id.* at 688. Petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional

---

[9] "Missouri's UMDDL was amended in 2009 and now provides that state officials' failure to comply with the UMDDL 'shall not be the basis for dismissing the indictment, information, or complaint unless the court also finds that the offender has been denied his or her constitutional right to a speedy trial.'" *Moore v. Steele*, No. 4:12CV1174 CDP, 2013 WL 3092186, at *2 n.4 (E.D. Mo. June 18, 2013) (quoting Mo. Rev. Stat. § 217.450(3)).

assistance." *Id.* at 689. Indeed, a strong presumption exists that counsel's conduct "might be considered sound trial strategy." *Id.* (citation and internal quotation marks omitted). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690. To establish prejudice, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. In the context of a habeas claim, it is not sufficient for Petitioner to "show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance." *Bell v. Cone*, 535 U.S. 685, 698-99 (2002). "Rather, he must show that the [state appellate court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* at 699.

The Missouri Court of Appeals found that neither of the *Strickland* prongs was satisfied, because there had been no UMDDL violation and thus the filing of a motion to dismiss under the UMDDL would have been "pointless." It stated:

> We need not reach [the] issue of whether the State had lodged a *de facto* detainer against Rhoades because, even when assuming *arguendo* that it had, Rhoades's [ineffective assistance of counsel] claim would still be without merit in light of the fact that he never actually filed a motion for speedy trial to start the clock running under the UMDDL. "A fundamental procedural requirement of Section 217.450 is a written demand for speedy disposition addressed to the court and prosecuting attorney where the charges are pending." *Greene v. State*, 332 S.W.3d 239, 243 (Mo. App. W.D. 2010) (quotation omitted). "The 180-day time limit begins to run only when both the prosecuting attorney and the circuit court receive a defendant's request for disposition of pending charges." *Id.* (citing Section 217.460).
>
> Rhoades argues that in January 2007 and in July 2007 he sought through the DOC to have the instant charges (which were filed against him in December 2006) disposed of in a full and final fashion, and that these inquires [sic] somehow constituted substantial compliance with the UMDDL. But this Court has held that such inquiries to the DOC, alone, do not constitute a written demand sufficient to trigger the UMDDL. *See Green*, 332 S.W.3d at 245 ("In this case, Greene merely sent a letter to the DOC requesting advice on how to initiate the

180-day time limit. The DOC returned this letter and notified him that there was no detainer lodged against him. A claim of substantial compliance requires, at a minimum, that the defendant submit a request addressed to the circuit court and the prosecuting attorney.").

A detainer (*de facto* or otherwise) can be lodged against the defendant by the State, but if the defendant does not assert his right to a speedy trial as required by UMDDL, it is pointless to file a motion to dismiss on that basis because the 180 day period never began. *See* Section 217.460 ("Within one hundred eighty days after the receipt of the request and certificate, pursuant to sections 217.450 and 217.455, by the court and the prosecuting attorney . . . the indictment, information or complaint shall be brought to trial"); *see also Branstetter*, 107 S.W.3d at 472 (defendant filed a demand for speedy trial with the court and the prosecutor on August 21, 2000, which was prior to his trial on January 9, 2002, thereby satisfying that specific statutory requirement of Section 217.450).

Resp't Ex. J at 13-14.

The Missouri Court of Appeals' decision was not contrary to or an objectively unreasonable application of *Strickland.* The court properly articulated the *Strickland* standard. Resp't Ex. J at 4-5. With regard to the first *Strickland* prong, it was not objectively unreasonable for the state court to find trial counsel not deficient for failing to file a motion to dismiss under the UMDDL when such a motion would have been "pointless" under state law because Petitioner had not satisfied the procedural requirements of the UMDDL. "Determinations of state law made by a state court are binding on a federal court in habeas proceedings." *Lupien v. Clarke*, 403 F.3d 615, 619 (8th Cir. 2005). This court cannot "second-guess the decision of a Missouri state court on Missouri law." *Arnold v. Dormire*, 675 F.3d 1082, 1086 (8th Cir. 2012).

Moreover, it was not unreasonable for the state court to find that trial counsel's failure to file a motion that would have been denied as a matter of state law did not result in prejudice to Petitioner.

For all of the above reasons, Claim Four must be denied.

### 5. Claim Five: Ineffective Assistance of Counsel – Failure to File Motion to Suppress Statements Obtained Without Miranda Warnings

In Claim Five of his Petition, Petitioner argues that his trial counsel was ineffective for failing to file and litigate a pretrial motion to suppress statements Petitioner made while he was in custody and no *Miranda* warning had been given. In these statements, Petitioner told police first that he did not know Patton and later that he did in fact know Patton, that Petitioner had gotten into a heated dispute with Patton, that Patton had threatened to shoot Petitioner and his girlfriend, that Patton had left, and that Petitioner did not know anything about Patton's whereabouts. Petitioner raised this claim in his motion for post-conviction relief and on appeal from the denial of post-conviction relief, and the Missouri Court of Appeals rejected the claim on the merits. Resp't Ex. J at 4-10.

As discussed above, to prevail on a claim of ineffective assistance of counsel, Petitioner must show that (1) "[his] counsel's performance was deficient" and (2) "the deficient performance prejudiced [his] defense." *Strickland*, 466 U.S. at 687. To obtain habeas relief, a petitioner "must show that the [state appellate court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell v. Cone*, 535 U.S. 685, 699 (2002).

In considering this claim, the motion court and the Missouri Court of Appeals found that Petitioner had not established ineffective assistance of counsel. The motion court found as follows:

> Movant claims his trial counsel was ineffective for failing to file and litigate a pretrial motion to suppress Movant's December 22, 2006 statement. Counsel was not ineffective. Trial counsel Mr. Slusher credibly testified that, as a matter of trial strategy, he believed the statement was going to come into evidence once Movant took the stand and testified. Therefore, there would be no reason to file a motion to suppress. Movant had made several statements about the same events, and it was reasonable trial strategy to anticipate that Movant would be subject to impeachment with his prior inconsistent statements. Even if Movant could overcome the presumption that his trial counsel acted with reasonableness in

> failing to file and litigate a motion to suppress, Movant cannot show prejudice. There is no reasonable probability of a different outcome at trial, because there were ample ways the same evidence would have come in.

Resp't Ex. F, at 5-6. The Missouri Court of Appeals, after citing the above findings, affirmed the finding of the motion court. Resp't Ex. J at 7-10. It emphasized that (1) under *Harris v. New York*, 401 U.S. 222, 226 (1971), when a defendant testifies at trial, his prior inconsistent statements to police are admissible as impeachment evidence even if those statements were obtained in violation of *Miranda*, (2) Petitioner testified at trial and did not dispute that he would have done so regardless of whether his attorney had filed a motion to suppress, and (3) the statements allegedly subject to suppression were inconsistent with his testimony to the jury and were properly used at trial to impeach that testimony. Applying the first prong of *Strickland*, the court found that the decision of whether to file a motion to suppress was a matter of trial strategy and that trial counsel could not be deemed ineffective for failing to file a motion to suppress statements that would have been admissible anyway. Resp't Ex. J at 10. Applying the second prong, the court found that because the statements would have been admitted as impeachment evidence, there was no reasonable probability that the outcome of his trial would have been different had a motion to suppress been filed. *Id.*

The Missouri Court of Appeals' decision did not involve an objectively unreasonable application of *Strickland*. The court correctly recognized that statements made during a custodial interrogation that lacked the procedural safeguards required by *Miranda* may be admitted for impeachment purposes if the defendant testifies at trial. *Harris*, 401 U.S. at 226 (holding that the "shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent statements"); *United States v. Issaghoolian*, 42 F.3d 1175, 1177 (8th Cir. 1994) ("It is well established that statements made

without warnings adequate to *Miranda* are admissible for the limited purpose of impeachment.").[10] Petitioner testified at trial that he was present when Patton was killed by Tim Adams—testimony inconsistent with his statement to police that Patton left Petitioner's girlfriend's house and that Petitioner did not know where Patton was. Resp't Ex. J, at 8. As the Missouri Court of Appeals noted in considering Petitioner's *Miranda* claim on direct appeal, "Rhoades's initial statement (without *Miranda* warnings) is *not* an incriminating statement, and the statement was not offered for an inculpatory purpose" but was rather "offered to show a prior inconsistent statement." Resp't Ex. D at 10-11 n.4. Thus, it was not unreasonable for the Missouri Court of Appeals to determine that these statements were admissible impeachment evidence even if they were obtained in violation of *Miranda*. Indeed, Petitioner's trial counsel testified before the motion court that he decided not to file a motion to suppress "as an overall matter of trial strategy," because "Mr. Rhoades was going to have to testify in order for us to have a defense" and because "[i]t was my belief that the unMirandized statement was going to come in once he testified," along with "other inconsistent previous statements." Resp't Ex. G at 35. Petitioner does not dispute that he would have testified at trial regardless of whether his counsel had successfully litigated a motion to suppress. Given *Strickland*'s "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," 466 U.S. at 689, it was not objectively unreasonable for the Missouri Court of Appeals to conclude that trial counsel was not deficient for deciding not to move to suppress evidence that was not itself inculpatory and that was admissible as impeachment evidence.

---

[10] The Court acknowledges that, had the statements to the police been "involuntary," they would not be admissible for any purpose. *See Mincey v. Arizona*, 437 U.S. 385, 398-402 (1978). However, Petitioner does not contend that his statements to police were not made voluntarily, nor does the record support such a position.

In addition, the Missouri Court of Appeals' finding that there was no reasonable probability that the outcome of the trial would have been different had the motion to suppress been filed was not an objectively unreasonable application of *Strickland*. It was not unreasonable for the state court to conclude that the successful litigation of a motion to suppress would not have affected the outcome of the trial, and that therefore there was no prejudice under *Strickland*, where the evidence would have been admitted for impeachment purposes even if the motion had been filed.

For all of the above reasons, Claim Five is denied.

## IV.    CONCLUSION

For the above reasons, Petitioner is not entitled to federal habeas relief. Under 28 U.S.C. § 2253, an appeal may not be taken to the court of appeals from the final order in a 28 U.S.C. § 2254 proceeding "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). To grant such a certificate, the judge must find that the petitioner "has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2); *Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (citation omitted). The Court finds that reasonable jurists could not differ on Petitioner's claims, so the Court will not issue a Certificate of Appealability. Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**.

**IT IS FURTHER ORDERED** that no Certificate of Appealability shall issue because Petitioner has failed to make a substantial showing that he has been denied a constitutional right. 28 U.S.C. § 2253.

A separate Judgment shall accompany this Memorandum and Order.

Dated this <u>26th</u> day of <u>September</u>, 2014.

/s/ Shirley Padmore Mensah
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE
